# In the United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

---

ASLI BAZ,
PETITIONER-APPELLEE,

*v.*

ANTHONY PATTERSON,
RESPONDENT-APPELLANT.

---

On Appeal From The United States District
Court For The Northern District of Illinois
Case No. 1:23-cv-05017
The Honorable Jorge L. Alonso, Judge

---

**EMERGENCY MOTION FOR STAY OF ENFORCEMENT OF JUDGMENT PENDING APPEAL**

---

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 3

BACKGROUND ............................................................................................. 4

ARGUMENT ................................................................................................. 10

   A.   Mr. Patterson has a strong chance of success on the merits ........................... 11

   B.   Mr. Patterson and A.P. will suffer irreparable injury if a stay is not granted 16

   C.   Granting a stay will not substantially injure Dr. Baz ..................................... 19

   D.   The public interest weighs in favor of a stay .................................................. 19

   E.   Mr. Patterson seeks an expedited appeal ....................................................... 20

Respondent-Appellant Anthony Patterson ("Mr. Patterson"), by and through his undersigned counsel, hereby requests an Emergency Stay of the District Court's judgment, dated December 21, 2023 (the "Judgment"), pending appeal to this Court.

## PRELIMINARY STATEMENT

This appeal involves a U.S. citizen's right to keep his child in the United States, where the parents agreed custody disputes should be handled, and the interaction between such agreements, court orders and the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89. ("the Hague Convention"). The Hague Convention is an anti-forum shopping agreement which seeks to prevent parents from unilaterally moving children across borders to seek favorable forums for custody determinations.

Following a trial in which Mr. Patterson was not represented by counsel and was forced to proceed on a *pro se* basis, the District Court entered its Judgment, finding that the "habitual residence" of Mr. Patterson's son is Germany and ordering his son to be sent there. The Judgment rendered by the District Court is based on an abuse of discretion because it weighed antecedent facts of A.P.'s acclimatization to Germany over the party's reaffirmation of the agreement that A.P.'s habitual residence was the United States, and legal error because it ignored the agreed, initial, continuing and exclusive jurisdiction of the Illinois Courts – with the effect of turning the Hague Convention, an *anti*-forum shopping convention, into a tool of forum shopping: endorsing the Petitioner-Appellee's ("Dr. Baz") attempts to shop for a preferred forum in Germany.

On those grounds, Mr. Patterson requested that the District Court stay enforcement of its Judgment pending appeal, but the District Court denied that request on December 22, 2023. The District Court, however entered a temporary stay through January 5, 2024 so that Mr. Patterson could request a stay from this Court. Because of the risk of harm to the minor child A.P. of a return, and because Mr. Patterson has a substantial case on the merits, a stay pending appeal should be granted.

Mr. Patterson asks that this emergency application be decided expeditiously in order to ensure that if the District Court's return order is put into effect, there is minimal impact on A.P.'s schooling, the new school term beginning in Illinois and in Germany on January 8, 2024.

## **BACKGROUND**

The Hague Convention "represents an international effort to deal with the vexing problem of child custody when more than one country is involved. It is fundamentally an anti-abduction treaty." *See Martinez v. Cahue*, 826 F.3d 983, 988-989 (7th Cir. 2016) (internal cites and quotations omitted). The Convention's remedy is one of return, which entitles a person whose child has wrongfully been retained in the United States in violation of the Convention to petition for return of the child to the child's country of 'habitual residence.' *See Garcia v. Pinelo*, 808 F.3d 1158, 1162 (7th Cir. 2015). This is because the Convention is principled on the idea that a child's country of habitual residence is best placed to decide upon questions of custody and access. *Id.* Very unusually, this case arises in a context where the parties have

already agreed and acquiesced to the initial, continuing and exclusive jurisdiction of the Illinois Family Courts

In May 2022, following an Allocation Agreement, entered as a judgment of the Circuit Court of Cook County, Illinois ("the Illinois Court"), by which Mr. Patterson and Dr. Baz made agreements as to the custody[1] of their minor child A.P., Dr. Baz moved with A.P. to Germany. *See* Opinion, at 2 – 3. A.P. lived in Germany from May 2022 – 3 July 2023.

At that point the Illinois Court had exercised its initial, continuing and exclusive jurisdiction over the custody dispute between Dr. Baz and Mr. Patterson for five years. Dr. Baz commenced the Illinois Court proceeding and received multiple favorable relocation orders for her studies in the United States from the Illinois Court, culminating in the Allocation Judgment which permitted her to move with A.P to Germany. *See* Opinion at 1 – 2.

The Allocation Judgment recorded that the Illinois Court, continued to exercise that exclusive jurisdiction despite the child moving to Germany, and the parties' agreement to the same. *See* Pet. Ex. 7;[2] Opinion at 3. Dr. Baz has continued to appear through counsel in the Illinois Court.

---

[1] Illinois technically determines "primary care" not "custody", although for these purposes the determination has the same purpose and function, the term custody is used for ease of comprehension.

[2] Sealed copies of the Transcript and sealed/redacted copies of the Trial Exhibits are available to the Circuit Court, and are not appended here to avoid duplication.

The Illinois Court has continued to exercise that jurisdiction, with hearings throughout 2023, and another hearing on the calendar for January 11, 2024.

Within months of arriving in Germany, and before any dispute had arisen, the mother hired German counsel. *See* Tr. 54:6-12. In January 2023, a dispute arose about compliance with the Allocation Judgment entered by the Illinois Court.

Mr. Patterson brought an emergency motion on January 11 in the Illinois Courts, the hearing of which Dr. Baz's counsel attended. *See* Tr. 144:23 – 14515. But instead of submitting to the Illinois Court which she had accepted the jurisdiction of, and agreed to the ongoing jurisdiction of, Dr. Baz instead sought relief from the Courts in Germany, bringing proceedings on February 20, seeking a travel ban and sole custody of A.P. *See* Opinion at 4; Tr. 144:23 – 145:15.

In fact, in an affidavit to the German Court Dr. Baz explained that she had lied to the Illinois Court when she said that she was seeking a green card to return. *See* Resp. Ex. 14 (page 7 of English translation).

Dr. Baz's Illinois Counsel withdrew, and she then proceeded to ignore the order of the Illinois Court on April 26, 2023, to provide the Illinois Court with contact information for the German Judge hearing the matter to permit a UCCJEA

Despite the assistance of Dr. Baz's counsel to Mr. Patterson who was *pro se*, there was some confusion regarding the numbering of Respondent's exhibits at Trial. *See* Opinion at ftn 5. The numbering adopted here is the numbering in the Respondent's List of Exhibits (Dkt. 67) which was used by Dr. Baz's counsel when preparing redacted and stamped version of the exhibits. However, having reviewed those, some exhibit number stamps are missing, and others appear to be mislocated. The undersigned is corresponding with Dr Baz's counsel regarding this to ensure there is an accurate record for the appeal.

Conference – a key step in resolving the parallel proceedings that she had created. Dr. Baz was clear in her testimony to the District Court that she did not do this because she was not represented by counsel at the time, and was not represented by counsel because she was shopping for the German forum. *See* Resp. Ex. 35 (Illinois Court Order, dated April 26);[3] Tr. 170:22 – 171:12 (Dr. Baz: "we already entered into German Court proceedings, and I did not want to do parallel proceedings in two different countries").

The dispute regarding the travel ban on A.P. was concluded in Germany with a consent order dated May 31, 2022, in which the Parties *reaffirmed* the Allocation Judgment ("the May 2023 Consent Order"). *See* Pet. Ex. 4, Opinion at 4 – 5.

The Allocation Judgment also contained an agreement between the parties that A.P.'s habitual residence for the purposes of the Hague Convention was to be the United States (and in particular Cook County, Illinois). *See* Opinion at 2 – 3. That was reaffirmed by the parties when the May 2023 Consent Order was made. *See* Opinion at 5, 10 – 11.

Both the Allocation Agreement underlying the Allocation Judgment and the May 2023 Consent Order were made by the parties with the advice and benefit of counsel, and entered a court orders, when disputes as to the care of A.P., his habitual residence and other matters were live between the parties.

---

[3] Per footnote 2 above, Resp. Ex. 35 appears to have its label mislocated in the redacted form finally provided to the Court by Petitioner's Counsel, in that it appears halfway through the collection of Court Orders and Correspondence that comprises Resp. Ex. 35.

Although Mr. Patterson's parenting time was to begin on 19 June 2023, Dr. Baz refused to make arrangements for him to collect his son. Therefore, having obtained an order from the Illinois Courts on June 27, 2023, on notice to Dr. Baz, Mr. Patterson arrived in Germany on July 3, 2023 and took his son, A.P. for the mandated parenting time under the May 2023 Consent Order. *See* Opinion at 6. *See also* Resp. Ex. 35 & Tr. 182:2 – 183:19.

Thereafter, on July 10, 2023, and July 25, 2023, the Illinois Court, exercising its initial, continuing and exclusive jurisdiction granted Mr. Patterson exclusive parenting time and decision making for A.P., first on an *ex parte* basis and then on notice. *See* Opinion at 7. Dr. Baz continues to have counsel of record for the Illinois Court. The Illinois Court found that Dr. Baz was "exhibit[ing] extremely concerning behavior as to direct violations of the [Allocation Judgment] and contradictions to her testimony in open court. [Dr. Baz] has shown utter disregard to the orders entered in this Court". *See* Resp. Ex. 35.

On August 1, 2023 Dr. Baz brought the underlying petition for return of A.P. to Germany as his habitual residence: seeking to use the Hague Convention (an anti-forum shopping treaty) to circumvent the *now* hostile Illinois Court which had dealt with the custody disputes between the parties for six years – the effect of any return order being that German Courts would determine custody.

Dr. Baz's application in the German Courts for sole custody of A.P. remains open and has not been withdrawn. The German Court has asked Dr. Baz to submit further documents, which she has not yet done. Further to the request of Dr. Baz's

German counsel three hearings (November 8, November 29, and December, 20) have been postponed.

On December 13, 2023, the District Court issued an Opinion under the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention") and the International Child Abduction Remedies Act ("ICARA") that directed the parties' six-year-old son, A.P., accompanied by Dr. Baz, be returned to Germany **(Exhibit A)**.

On December 14, 2023, Dr. Baz brought an emergency motion before the District Court seeking an order to return A.P. on December 15, 2023, depriving him of the chance to finish the school year or take part in his school's holiday show for which he had been preparing. **(Exhibit B)**.

On December 14, 2023, the District Court issued an Order under the Convention and ICARA, ordering that A.P., accompanied by Dr. Baz, be returned to Germany on December 23, 2023 **(Exhibit C)** (Together with the Opinion of December 13, "the Opinion and Order").

On December 21, 2023, the District Court entered judgment granting Dr. Baz's petition for return of A.P. to Germany. ("the Judgment") **(Exhibit D)**. The same day Mr. Patterson sought a stay in the District Court.

On December 21, 2023, Mr. Patterson filed a Notice of Appeal to the Seventh Circuit Court of Appeals appealing the Judgment **(Exhibit E)**. Pursuant to Federal Rules of Appellate Procedure 8(a)(l)(A), Mr. Patterson seeks a stay of the Judgment pending appeal. Pursuant to the same Rule Mr. Patterson first sought a stay in the

District Court prior to requesting relief from the Seventh Circuit Court of Appeals. Mr. Patterson further seeks an expedited briefing schedule for the appeal as set out below.

On December 22, 2023, the District Court heard argument on Mr. Patterson's Motion for Stay of Enforcement of Judgment Pending Appeal and denied the motion in part, issuing a temporary stay in order for Mr. Patterson to bring this motion **(Exhibit F)**. The next status conference in the District Court is scheduled for January 9, 2023. The District Court has instructed the parties to move expeditiously in this stay application.

## ARGUMENT

Stays are necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error. *See In re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). In the present case the costs of error are costs to be borne by a young child and tell strongly in favor of a stay.

Courts weigh four factors to determine whether a stay is warranted in Hague Convention cases: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay. *Chafin v. Chafin*, 568 U.S. 165 (2013) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

Each of these factors favors a stay of the Judgment, although the first and second factors are the most important, *Nken*, 556 U.S. at 434, and a strong showing on one factor results in less weight being placed on others. *See In re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014) ("[A] 'sliding scale' approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa.").

**A. Mr. Patterson has a strong chance of success on the merits**

The first factor favors a stay application where there is "only a substantial case on the merits." *See Vale v. Avila*, No. 06-1246, 2008 WL 2246929, at *2 (C.D. Ill. May 29, 2008). An applicant need not show that they are more likely than not to succeed. *See In the Matter of Forty–Eight Insulations, Inc.,* 115 F .3d 1294, 1301 (7th Cir.1997). The first factor thus favors Mr. Patterson, given that the District Court erred both in its habitual residence determination and in its application of the Hague Abduction Convention to assist Dr. Baz in her blatant attempts to forum shop and avoid the jurisdiction of the Illinois Courts.

I. **The District Court erred in its habitual residence determination**

The District Court made a key error in failing to properly weigh the reaffirmation of the agreement by the parties in the May 2023 Consent Order (mere weeks before the date that the Court found a wrongful retention to have taken place) that the child's habitual residence was the United States of America.

*Monasky v. Taglieri,* 140 S. Ct. 719, 723 (2020) instructs district courts to assess the totality of the circumstances when determining the habitual residence,

and not *require* agreement or evidence of shared intent between the parties to establish a habitual residence. This determination is subject to clear error review. Despite this differential standard, the habitual residence determination is often determinative and therefore any review needs to be done with particular care and consideration. *See Martinez*, at 989 (enunciating this circuit's pre-*Monasky* adoption of *de novo* review).

Mr. Patterson and his counsel are unaware of any post-*Monasky* decision that considered *how* to apply this totality of the circumstances test where the parties have, with the benefit of counsel, reached agreements as to habitual residence, which have been entered as court orders, let alone where such agreements have been reaffirmed in the same manner *just weeks* prior to an alleged wrongful removal.

While clear error review places a heavy burden on Mr. Patterson, the extraordinary facts here mean that Mr. Patterson has *at least* something more than a possibility of success. This is because the effect of the District Court's application of the *Monasky* "totality of the circumstances" test on these facts reduces agreements reached with the benefit of counsel, entered as court orders, and relied on by parties, to nothing more than mere paper, which can be displaced *not only* by subsequent factual changes but by antecedent facts known and existing at the time of agreement.

With respect to the District Court, that conclusion is more than arguably implausible. It renders the agreements as to international custody that parents rely on and that Courts enter, close to meaningless.

*Monasky,* at 728 counsels that "an actual agreement requirement would enable a parent, by withholding agreement, unilaterally to block any finding of habitual residence...", but the converse is as true: by not giving the proper weight to an agreement made with advice of counsel and entered as a court order, and allowing *antecedent* factual indicators of acclimatization to control, the Courts gives parties permission to cross their fingers when making consequential agreements about international child custody.

An agreement as to habitual residence, while it cannot bind the Court, should restart the clock on consideration of the factual acclimatization of the child. This being the case, the Court grievously erred in taking account of the pre-reaffirmation factual acclimatization of A.P. and weighing it *over* the agreement and subsequent reaffirmation of the parties that A.P.'s habitual residence was the United States.

## II. The District Court erred in not holding the parties to their agreement about jurisdiction.

The purpose of the Hague Convention is to put the custody dispute where it belongs and to "discourage forum shopping [...] by depriving the abductor's actions of any practical or jurisdictional consequences". *See Koch v. Koch*, 450 F.3d 703, 712 (7th Cir. 2006).

This is not a 'typical case' where a taking parent moves the child from the habitual residence to another jurisdiction and seeks custody orders. Rather, it is a case where Mr. Patterson seeks simply to hold the Dr. Baz to their bargain: that the Illinois Courts will retain exclusive jurisdiction over custody issues, as they have

since shortly after A.P.'s birth; while Dr. Baz seeks to invoke the Convention to undo that and aid in her attempts to forum shop in Germany.

The Convention is intended to *avoid* self-help and forum shopping, but in this case, by not holding the parties to their agreement about jurisdiction, the District Court has turned the Hague Convention, on these facts, into a tool *for* forum shopping: Giving Dr. Baz's attempts to flee a jurisdiction which she sees as disadvantageous (Illinois), for one which she hopes to do better in (Germany) the practical and jurisdictional consequences they would otherwise lack.

Dr. Baz has been brazen about this: even admitting that she ceased to engage with the *ongoing and pre-existing* Illinois Court proceedings because she wanted her new German case to proceed instead. *See* 3 above and Tr. 170:22 – 171:12.

The proper place for the custody dispute between the parties is *and always has been* Illinois. The Illinois Court has initial continuing and exclusive jurisdiction, a fact never disputed by Dr. Baz here, and which Dr. Baz accepted by entering into (and subsequently reaffirming) the Allocation Agreement. The parties agreed and accepted that the Illinois Courts should exercise exclusive jurisdiction over their custody dispute, and it has and continues to do so.

In a case such as this, there is no role for the Hague Convention's return mechanism, which is intended to return a child to the jurisdiction best placed to determine custody, because there is already one (Illinois) and the child is here. In a case such as this then, the Hague Convention's return mechanism becomes a tool of forum shopping – permitting Dr. Baz here to ride roughshod over the Allocation

Agreement, and seek custody determinations in her preferred jurisdiction *over and in place of* Illinois' continuing exclusive jurisdiction.[4]

It is hard to think of more personally consequential agreements than those entered into to govern the international custody of minors – when made they should govern. The purposes of the Convention are *undermined*, not supported, by applying it where such agreements have been made and courts of one nation have continued to exercise their pre-existing jurisdiction. Where such agreements have been made, the Convention has no role, rather the disputes should be determined by the Court so designated by the parties: here the Illinois Court.

The District Court erred in failing to hold the parties to their agreement and turning the Hague Convention into a tool for forum shopping. The proper relationship between jurisdictional agreements and orders such as the ones in this case and the Hague Convention is a question of law to be reviewed *de novo*, and is one on which Mr. Patterson has a substantial case on the merits because the District Court's conclusion *undermines* the very purpose of the Hague Convention.

There are ongoing adversarial proceedings in Illinois and in Germany regarding custody of A.P., the parties have appeared in both. The Illinois Courts have made an order for sole custody for Mr. Patterson, the German Courts have indicated they intend to dismiss Dr. Baz's action there and defer to the Illinois Court. *See*

---

[4] Indeed, as set out above, the Illinois Court has made a custody determination in the preliminary injunction dated July 25, 2023, exercising their continuing exclusive jurisdiction. The Court did so at a hearing on notice to both parties, granting exclusive parenting time and decision making for A.P. to Mr. Patterson.

Opinion at 14. *See also* Resp. Exs. 30[5] (Letter of German Court dated June 19, 2023) & 36[6] (Letter of German Court dated November 16, 2023). In such a situation, "It is time for this federal overlay to end" and to allow the German and Illinois Court to resolve this matter without Federal interference. *See Redmond v. Redmond*, 724 F.3d 729, 749 (7th Cir. 2013).

## B. Mr. Patterson and A.P. will suffer irreparable injury if a stay is not granted

In the context of Hague Convention proceedings, courts consider the injury to the child under the second factor. *See Chaffin*, at 179 ("In every case under the Hague Convention, the well-being of a child is at stake; application of the traditional stay factors ensures that each case will receive the individualized treatment necessary for appropriate consideration of the child's best interests.").

Mr. Patterson and A.P. will suffer irreparable injury if the stay is not granted. Both because of the high-risk of a re-return of A.P. and because of the risk that Dr. Baz will flee Germany.

As the District Court acknowledged (*See* Opinion, 14), sending A.P. back to Germany before the appeal is resolved could result in his presence in Germany for only a short period of time before being ordered back to the United States either pursuant to a successful appeal, or resolution of the ongoing German proceedings which (as the Court also accepted) have deferred to the Illinois State Courts (*Id.*).

---

[5] Per Footnote 2 above, Resp. Ex. 30 appears to run on from Resp. Ex. 29 in the redacted form finally provided to the District Court by Petitioner's Counsel.

[6] Per Footnote 2 above, Resp. Ex. 36 is not labeled in the redacted form finally provided to the District Court by Petitioner's Counsel.

Indeed, the Supreme Court has cautioned that the importance of prompt return needs to be weighed against "the concern that shuttling children back and forth between parents and across international borders may be detrimental to those children." *Chaffin*, at 178. *See also Didon v. Castillo*, 838 F.3d 313, 319 n.12 (3d Cir. 2016) (because "multiple relocations of [a] child" may be "detrimental," courts "issuing a return order in a Hague Convention matter should seriously consider the possibility of staying that order pending appeal".) This Circuit has also acknowledged the same: The Seventh Circuit has granted a stay pending appeal to protect a child from the "serious harm" that could be caused from a "brief period" of return. *See Kijowska v. Haines*, 463 F.3d 583, 590 (7th Cir. 2006). While *Kijowska* pre-dates *Chaffin*, its reasoning is on all fours with *Chaffin* – stays are not automatic, but where a re-return in short order is a real possibility the wellbeing of the child tells in favor of a stay.

Here, where the parties are in active litigation in Germany and in Illinois parallel to this appeal, all of which may offer avenues for the re-return of A.P. to the United States, it is proper for the Court to prioritize the wellbeing of A.P. and not order what may well become multiple detrimental relocations.

Furthermore, there is a real risk of Dr. Baz's flight upon the return of A.P to Germany. Dr. Baz obtained A.P.'s German passport behind Respondent-Appellant's back, without his permission and without informing the Illinois Court. *See* Tr. 97:20—98:5 & 164:2 – 166:7. The Illinois Court has found her to have "shown utter disregard" for its orders. *See* Opinion, 14.

Dr. Baz has so far sought to delay and put off the resolution of the ongoing German proceedings where the clear indication of the German Court is that it will in fact defer to the Illinois Court (*id.*) and dismiss the mother's German petition. Together these facts indicate that there is a real and substantial risk that Dr. Baz may flee Germany with A.P.

Indeed, it is telling that Dr. Baz has offered no undertakings to this Court or to the German Court, nor made any offer to reduce this risk (such as surrendering A.P.'s German passport to the German Court on return).

Dr. Baz's representations on this topic must be treated with great caution. Judge Rosen, who has dealt with the custody dispute between the parties since before the Allocation Judgement, after hearing the preliminary injunction on July 25, 2023, on notice to Dr. Baz, criticized Dr. Baz heavily as "exhibit[ing] extremely concerning behavior as to direct violations of the [Allocation Judgment] and contradictions to her testimony in open court. [Dr. Baz] has shown utter disregard to the orders entered in this Court". *See* Resp. Ex. 35. In light of this assessment by Judge Rosen, who has dealt with the custody matters for several years now, the risk of Dr. Baz further flouting Court orders and fleeing must be treated with the utmost seriousness.

This weighs in favor of staying the return of A.P., both to avoid disruption to him of a re-return, and because the position for the mother in Germany may itself increase the risk that Dr. Baz will flee Germany.

A.P is well looked after by Mr. Patterson, enjoying school, extra-curricular activities, and is in the presence of siblings and wider family. *See* Opinion, at 3. A.P.

is represented by a Guardian *ad litem* in Illinois (and has had the benefit of the same Guardian *ad litem* since 2017), and is under the jurisdiction of the Illinois State Courts who have sought, for the vast majority of his life, to pursue and protect his best interests. Whether Mr. Patterson eventually succeeds or not, A.P. will be safe and well cared for during the pendency of any appeal.

### C. Granting a stay will not substantially injure Dr. Baz

Issuance of the stay will not substantially injure Dr. Baz. Mr. Patterson has voluntarily provided Dr. Baz with access to A.P. and to parenting time while in the United States and has offered to continue to do so during the pendency of this appeal. This is despite Dr. Baz's right to such having been removed by the Illinois courts. A short additional delay in the child's move to Germany (if Mr. Patterson loses the appeal) will not injure Dr. Baz in any substantial way, nor would any injury to Dr. Baz outweigh the injury to the child of a double removal, let alone any possible unlawful removal from Germany.

### D. The Public Interest weighs in favor of a stay

The public interest also weighs in favor of a stay: The paramount public interest is in the correct application of the Convention. The appeal would clarify points of vital importance to all families who seek to enter agreements, endorsed by the US Courts, to provide for the sharing of custody across borders.

Furthermore, the public interest is clearly served by protecting children who are subject to Allocation Judgments and other State Court endorsed agreements about international child custody: Staying the order to return pending an appeal

would achieve this, allowing the important questions about the interaction between Illinois' uncontested exclusive and continuing custody jurisdiction and a petition for return under the Hague Convention to be explored. Similarly, by permitting a stay pending appeal, the public interest is served in allowing the Illinois Courts to continue to exercise the jurisdiction they've exercised over this dispute for six years, protecting the well-being of A.P.

### E. Mr. Patterson Seeks an Expedited Appeal

Mr. Patterson has retained *pro bono* appellate counsel, has filed a notice of appeal, and now seeks an expedited briefing schedule if a stay is granted. The parties have tried to agree an expedited briefing schedule, but have been unable to do so. Mr. Patterson requests the following briefing schedule if the stay is granted: Respondent-Appellant Brief due January 26, 2024, Petitioner-Appellee brief due February 16, 2024, Reply brief due March 1, 2024.

WHEREFORE, the Respondent-Appellant, ANTHONY PATTERSON, prays that this Court:

A.    Stay the Judgment pending appeal;

B.    Set an expedited briefing schedule if the stay is granted;

C.    Grant any such other relief as this Court deems just.

Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP

/s/ Jonathan Schaffer-Goddard
Jonathan Schaffer-Goddard
HOLWELL SHUSTER & GOLDBERG LLP

425 Lexington Avenue
New York, New York 10017
(646) 837-8423
Email: jschaffer-goddard@hsgllp.com

*Pro Bono Attorney for Respondent-Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2023 I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: December 29, 2023

/s/ Jonathan Schaffer-Goddard

JONATHAN SCHAFFER-GODDARD